FILED

September 3 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0374

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 307

JAMES C. LOHMEIER, SANDY McMANUS
and ROSELEE FAUST,

      Plaintiffs and Appellees,

  v.

STATE OF MONTANA, MONTANA DEPARTMENT
OF NATURAL RESOURCES AND CONSERVATION,
and UTILITY SOLUTIONS, LLC,

      Defendants and Appellants.

FILED

SEP   3 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the First Judicial District,
                   In and For the County of Lewis and Clark, Cause No. ADV-2006-454
                   Honorable Dorothy McCarter, Presiding Judge

COUNSEL OF RECORD:

      For Appellant Montana Department of Natural Resources and Conservation:

            Britt T. Long, Tim D. Hall, Candace F. West, Anne W. Yates,
            Special Assistant Attorneys General, Helena, Montana

      For Appellant Utility Solutions, LLC:

            Matthew Williams, Williams & Jent, PLLP, Bozeman, Montana

            Donald D. MacIntyre, Attorney at Law, Helena, Montana

      For Appellees:

            Arthur V. Wittich, Frederick P. Landers, Jr., Hertha L. Lund,
            Wittich Law Firm, P.C., Bozeman, Montana

Submitted on Briefs:  May 7, 2008

Decided:  September 3, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Montana's Department of Natural Resources and Conservation (DNRC) and Utility Solutions (US) appeal the order of the First Judicial District Court, Lewis and Clark County, granting summary judgment in favor of plaintiffs and appellees, Lohmeier, McManus and Faust (the Lohmeiers), and denying summary judgment for the defendants, DNRC and US. We reverse.

¶2 The Lohmeiers sought a declaratory judgment invalidating the DNRC's repeal of Admin. R. M. 36.12.101(39) (2005), which defined the term municipal use as used in the Montana Water Rights Act. The Lohmeiers claimed the repeal was invalid because the repeal essentially broadened the municipal use exception contained in § 85-2-343(2)(c), MCA (2005), thereby allowing the DNRC to consider and approve more permits and a wider variety of applicants in the upper Missouri River basin than before the regulation's repeal. The Lohmeiers further asserted that the DNRC's likely approval of more applications had the potential to harm their senior appropriated water rights on the Gallatin River, a tributary of the upper Missouri. The District Court agreed, granting summary judgment for the Lohmeiers and reinstating the regulation defining "municipal use" as "water appropriated by and provided for those in and around a municipality or unincorporated town." Admin. R. M. 36.12.101(39) (2005). Defendants DNRC and US appeal.

¶3 The sole issue on appeal is whether the District Court erred as a matter of law by declaring the DNRC's repeal of Admin. R. M. 36.12.101(39) (2005), defining "municipal use," invalid under § 2-4-506, MCA.

3

## FACTUAL BACKGROUND

¶4    After the passage of the Montana Water Use Act in 1973 and the DNRC's subsequent determination of claims, "[i]t became clear . . . that there were significantly more adjudicated and legitimate non-adjudicated claims to water than there was available water" in the upper Missouri River basin. *Montana Trout Unlimited v. Montana DNRC*, 2006 MT 72, ¶ 7, 331 Mont. 483, ¶ 7, 133 P.3d 224, ¶ 7. The upper Missouri River basin closure law (basin closure law), §§ 85-2-342 and -343, MCA (2005), enacted in 1993 in response to this over-appropriation of water, placed a moratorium on new applications for water rights in the Missouri River basin upstream from the Morony Dam near Great Falls. The Gallatin River is a tributary of the upper Missouri River and subject to the basin closure law.

¶5    The 2003 Legislature amended § 85-2-302(2), MCA, to require the DNRC to "adopt rules that are necessary to determine whether or not an application is correct and complete, based on the provisions applicable to issuance of a permit under this part. The rules must be adopted in compliance with Title 2, chapter 4." 2003 Mont. Laws, ch. 574, § 1. The DNRC ultimately promulgated many new rules addressing the permit application process.[1] Among these rules was a regulation defining "municipal use," a term used at least thirteen times in the text of and annotations to the 2003 Montana Water Use Act, but undefined by statute. The new regulation defined municipal use as "water

---

[1] A water permit is a temporary water right given while an appropriation determination is pending. The DNRC is also authorized to issue interim permits for the period when the permit application is pending.

appropriated by and provided for those in and around a municipality or an unincorporated town." Admin. R. M. 36.12.101(39) (2005).

¶6 Problems arose when the new regulation, Admin. R. M. 36.12.101(39) (2005), was applied in conjunction with § 85-2-343(2)(c), MCA (2005). This statute exempts from basin closure limitations any application for a permit to appropriate water for "municipal use." Under the administrative rule's new definition of "municipal use," arguably only a municipality or unincorporated town could qualify as an acceptable appropriator, whereas previously it was only necessary that the water be appropriated *for* those in a municipality or unincorporated town. Therefore, private entities, such as private utility companies who sought to appropriate water for public or municipal purposes and who were previously allowed to do so, could no longer qualify for closed basin water rights under the municipal use exception under this definition. Moreover, this definition was not limited to the basin closure law. It applied to all references to municipal use throughout the Montana Water Use Act.

¶7 One year after the DNRC promulgated the regulation defining "municipal use," the DNRC sought to repeal it, asserting that the definition was not in keeping with the historical interpretation of the term by the Montana Water Court and the DNRC. The DNRC asserted that, between the years 1973 and 2005 before Admin. R. M. 36.12.101(39) (2005) went into effect, the DNRC had permitted many appropriations for municipal use by private entities and utility companies, such as the Mountain Water Company in Missoula. The DNRC argued that this new definition was not in keeping with the historical application of municipal use and unfairly resulted in denying

5

appropriators municipal use applications based on their status as or affiliation with a private entity. Among others, US, the utility and development company based in the Four Corners area outside Bozeman, submitted several comments to the DNRC both before and after the promulgation of the municipal use definition, arguing against the new definition because it effectively excluded private entities seeking municipal use permits.

¶8 The DNRC followed the necessary protocol and procedural steps to repeal the rule, offering a comment period and public notice. Following repeal, the Lohmeiers brought a declaratory judgment action, requesting the District Court to declare the DNRC's repeal of Admin. R. M. 36.12.101(39) (2005) invalid, pursuant to § 2-4-506, MCA. US subsequently intervened in the case as a co-defendant with the DNRC.

¶9 The DNRC moved for summary judgment arguing that the Lohmeiers could suffer no harm by the repeal given the other protections afforded by § 85-2-311(1)(b), MCA (2005), which provided that the permit applicant must show that its proposed use would have no negative effect on senior water rights holders in that area. The DNRC also argued that the rule was not repealed with an arbitrary and capricious disregard for the purpose of the authorizing statute. Also requesting summary judgment, intervener US argued that the case was non-justiciable because there was no actual injury to the Lohmeiers. In addition, the Lohmeiers filed a cross-motion for summary judgment, arguing that § 2-4-506, MCA, and this Court's opinion in *Montana Trout Unlimited* provided ample legal authority for their request for relief.

¶10 The District Court held that the DNRC violated § 2-4-506, MCA, when it repealed the administrative rule defining "municipal use." The court determined that by repealing

6

Admin. R. M. 36.12.101(39) (2005), the DNRC rendered the term municipal use nebulous and unfairly accommodating of private developers' applications for permits. The court ruled that the basin closure law was designed to protect and preserve existing water rights holders and that the DNRC's repeal of the definition of municipal use would undermine that purpose, potentially threatening the senior water rights holders in an already over-appropriated water source. The court further concluded that the DNRC's repeal of the administrative rule contravened legislative intent and placed the existing water rights of the plaintiffs in jeopardy. The court granted summary judgment to plaintiffs, declaring the DNRC's repeal of its administrative rule invalid.

¶11 Prior to the District Court's entry of summary judgment, US had applied for and was granted several municipal use permits. Then, the 2007 Legislature amended the basin closure laws by eliminating any mention of municipal use and devising a new method of granting closed basin water rights. 2007 Mont. Laws, ch. 391, §§ 5, 9, 11. Because the 2007 law was not retroactive, the permits that the DNRC granted in 2006, after it repealed the definition of municipal use, were still effective. Additional cases have since been brought by senior water rights holders challenging the grant of these 2006 municipal use permits and arguing that the Legislature did not intend the municipal use exception to allow private entities, like US, to apply for or be granted a municipal use permit, when it enacted the basin closure law.

## STANDARD OF REVIEW

¶12 We review a grant of summary judgment de novo under the same M. R. Civ. P. 56 standard applied by a district court. *Chain v. State, Dept. of Justice*, 2004 MT 216, ¶ 8,

322 Mont. 381, ¶ 8, 96 P.3d 1135, ¶ 8. Where a court determines that no genuine issues of material fact exist and concludes that the moving party is entitled to judgment as a matter of law, we review the court's conclusions of law to determine whether the court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co., Inc.*, 271 Mont. 459, 469, 898 P.2d 680, 686 (1995).

## DISCUSSION

¶13   **Mootness and justiciability.**

¶14   Before we reach the main issue before this court, we must consider the threshold issue of whether this case is moot. *Shamrock Motors, Inc. v. Ford Motor Co.*, 1999 MT 21, ¶ 17, 293 Mont. 188, ¶ 17, 974 P.2d 1150, ¶ 17. A matter is moot when, due to a change in circumstance, the legal issue presented to a court ceases to exist and no longer presents a controversy. *Grabow v. Montana High School Ass'n*, 2000 MT 159, ¶ 14, 300 Mont. 227, ¶ 14, 3 P.3d 650, ¶ 14, citing *Shamrock*, ¶ 19. However, when faced with a constitutional question that becomes moot due to a change in circumstance, this Court will nonetheless consider the merits of the moot issue when the issue is capable of repetition yet evades review. *Common Cause v. Statutory Committee*, 263 Mont. 324, 328, 868 P.2d 604, 606 (1994).

¶15   We conclude that the issue before this Court is not moot, notwithstanding the 2007 amendments to the basin closure law, because the issue continues to present a controversy due to the nature of water rights applications. The filing date of a water rights application determines both the priority of the claim and the law that applies to that claim and any challenges to the water right. Section 85-2-302(4), MCA. Although the

8

2007 Legislature changed the law so that a municipal use exception no longer exists for closed basin areas, the new law is not retroactive and the status of outstanding water permit applications—at least two of which are currently in litigation—depends on the outcome of this case. Therefore, we conclude this matter is not moot.

¶ 16    Second, we examine whether the issue before us presents a justiciable controversy. US argues on appeal that the Lohmeiers' complaint did not present the District Court with a justiciable controversy because the administrative rule repeal did not abridge any of the Lohmeiers' rights, and any rights the plaintiffs had under Admin. R. M. 36.12.101(39) (2005) were purely theoretical. If the Lohmeiers' rights were not impaired after the basin closure but prior to the enactment of the rule, US argues their rights could not be impaired by the repeal of the rule returning them to the prior status quo.

¶ 17    In response, the Lohmeiers assert that this Court, in *Montana Trout Unlimited*, specifically held that the basin closure laws are intended to protect senior water rights holders from the injury of spending time and money to defend their water rights and assert their objections to new applicants before the DNRC, a time consuming and expensive process. By repealing the narrower municipal use definition, they argue, the DNRC has opened the floodgates of applications, thus compelling the Lohmeiers to spend the time and money to defend their water rights which this Court sought to prevent via the language in *Montana Trout Unlimited.*

¶16    We conclude that this case is justiciable, given the Lohmeiers' statutory right to bring an action under § 2-4-506, MCA. As plaintiffs who are asserting senior water rights, the Lohmeiers are entitled to bring this action but bear the burden of proving that

9

the repeal of the rule met one of two statutory prongs under § 2-4-506, MCA, which addresses declaratory judgments on the validity or application of agency rules. They must demonstrate either that the repeal of the rule interferes with or impairs or threatens to interfere with or impair their legal rights or privileges, or that the repeal of the rule was implemented with an arbitrary or capricious disregard for the purpose of the authorizing statute as evidenced by the documented legislative intent. Section 2-4-506, MCA.[2]

¶17 **Did the District Court correctly conclude that the repeal was invalid?**

¶18 The State, acting through the DNRC, coordinates the development and use of the water resources of the State so as to effect full utilization, conservation, and protection of its water resources. Section 85-1-101(3), MCA. A person may only appropriate water upon applying for and receiving a permit from the DNRC. Section 85-2-302(1), MCA. The DNRC may adopt rules necessary to implement and carry out the purposes and provisions of the surface and groundwater laws to "provide for the administration, control and regulation of water rights and establish a system of centralized records . . . ." Section 85-2-101(2), MCA. Moreover, the DNRC is authorized to adopt rules that are necessary to determine whether or not an application for water rights is correct and complete. Section 85-2-302(2), MCA.

¶19 As noted above, the upper Missouri River basin is closed pursuant to §§ 85-2-319, 85-2-342, and -343, MCA. " '[B]asin closure area' means a hydrologic drainage basin area within which applications for certain water use permits cannot be accepted. Basin

---

[2] Under § 2-4-102(11)(a), MCA, a "rule" for purposes of § 2-4-506, MCA, includes the repeal of a prior rule.

10

closure areas can be designated by statute, administrative rule, or in compacts." Admin. R. M. 36.12.101(9) (2005). The basin closure law provides that the DNRC "may not process or grant an application for a permit to appropriate water . . . within the upper Missouri River basin until the final decrees have been issued . . ." unless the applicant's proposed water use falls within one of the enumerated exceptions. Section 85-2-343, MCA (2005). Municipal use was one of those exceptions:

> (1) As provided in 85-2-319 and subject to the provisions of subsection (2) of this section, the department may not process or grant an application for a permit to appropriate water or for a reservation to reserve water within the upper Missouri River basin until the final decrees have been issued in accordance with part 2 of this chapter for all of the subbasins of the upper Missouri River basin.
> (2) The provisions of subsection (1) do not apply to:
>
> . . .
>
> (c) an application for a permit to appropriate water for domestic, **municipal**, or stock **use** . . . .

Section 85-2-343, MCA (2005) (emphasis added). However, the Legislature did not statutorily define "municipal use."

¶20 Between 1973 when the Water Use Act was enacted and 1993 when the basin closure law for the upper Missouri was enacted, municipal use applications were typically processed one at a time with attention given to the nature of the use—if the water was to be used for a public water supply, it was municipal use. The DNRC granted many municipal use permits to non-municipalities seeking to appropriate water for public supply, such as private entities and water and sewer districts. From 1993 to 2005, the term municipal use remained largely undefined under rule or statute, with one exception. Section 85-2-227(4), MCA (2005), which addresses criteria for presumption of municipal

11

nonabandonment, describes municipal use as "use by a city, town, or other public or private entity that operates a public water supply system." Outside of this statute, however, the question of whether a use was municipal was left to the interpretation of the DNRC under the particular facts of each case.

¶21 In its decision granting summary judgment to the Lohmeiers, the District Court identified one issue: whether the DNRC's repeal of the regulation defining municipal use is a violation of § 2-4-506, MCA. Section 2-4-506, MCA, provides that an agency rule can be held invalid if (1) it is found that the rule or its threatened application interferes with or impairs or threatens to interfere with or impair the legal rights or privileges of the plaintiff; or (2) the rule was adopted with an arbitrary or capricious disregard for the purpose of the authorizing statute as evidenced by the documented legislative intent. The District Court concluded as a matter of law that the DNRC's repeal of Admin. R. M. 36.12.101(39) (2005) was invalid because it violated both of the foregoing subsections of § 2-4-506, MCA.

¶22 The DNRC argues on appeal that the Lohmeiers failed to demonstrate either that it repealed the rule with arbitrary or capricious disregard for the purpose of the authorizing statute, or that Lohmeiers' rights and privileges were impaired by the DNRC decision to repeal and revise the definition of "municipal use." As to the latter matter, the DNRC maintains that the Lohmeiers' rights were wholly and adequately protected under § 85-2-311(1)(b), MCA, which requires a new water right applicant to show by a preponderance of the evidence that "the water rights of a prior appropriator under an existing water right, a certificate, a permit, or a state water reservation will not be

adversely affected." The DNRC further argues that § 85-2-307(2), MCA, affords the Lohmeiers an opportunity to object to a new water right application and voice objections before the DNRC. Thus, it maintains, no water rights or privileges have been impaired or threatened.

¶23 As to the contention that the decision to repeal was made "with arbitrary and capricious disregard for the purpose of the authorizing statute," (§ 2-4-506(2), MCA) the DNRC argues that the District Court erred in identifying "the authorizing statute." The court appeared to rely upon the upper Missouri River basin closure statute, § 85-2-343, MCA (2005), as the authorizing statute, in rendering its opinion. However, this statute does not "authorize" or even reference rule-making; rather, it addresses the processing and granting of an application to appropriate water. The authorizing statute—the one under which the rule was promulgated—is § 85-2-302(2), MCA (2005). This statute provides the DNRC with express authority to adopt rules governing the process for approving permit applications and issuing permits for water appropriation. The DNRC argues that Lohmeiers presented no evidence to support the contention that the DNRC's actions in repealing the recently enacted rule was either arbitrary or capricious.

¶24 The Lohmeiers respond that having to challenge permit applications through the administrative process and judicial review process is the impairment suffered by senior water rights holders as a result of the rule repeal. They further argue that the District Court correctly held that the DNRC acted with arbitrary or capricious disregard for the authorizing statute because the purpose of the basin closure laws was to protect and preserve existing water rights.

13

¶25 US argues that the repeal or codification of a definition is purely an administrative matter entrusted to the agency, and that the District Court erred in failing to defer to the agency's judgment.

¶26 The DNRC is empowered to act in both a quasi-legislative and quasi-judicial manner. Section 85-2-112, MCA. Section 85-2-113(2), MCA, delegates authority to the DNRC to "adopt rules necessary to implement and carry out the purposes" of surface and groundwater regulation. Under § 85-2-302(2), MCA (2005), the DNRC controls the permit application process for new appropriations of water and determines if an applicant meets the DNRC's criteria for a water use permit.

¶27 An administrative agency's quasi-legislative authority may be challenged under § 2-4-506, MCA. However, where the challenger does not meet the burden of proof, deference to the agency's decision is appropriate. Additionally, "deference to agencies is most appropriate when the agency interpretation has stood unchallenged for a considerable length of time, thereby creating reliance in the public and those having an interest in the interpretation of the law." *Montana Trout Unlimited*, ¶ 37. We conclude here that the Lohmeiers failed to demonstrate how they are injured by the agency's case-by-case interpretation of "municipal use," which was the unchallenged modus operandi of the DNRC for years before the rule was enacted, interrupted by a period of only eighteen months.

¶28 In 1993, the upper Missouri River basin closure law was the third basin closure law to be enacted and the second that contained an exception for municipal use. However, the Legislature again declined to define the term. "Where the Legislature

14

acquiesces in long-standing agency interpretation of a statute and takes no action to inform that interpretation, the court will presume that the Department has properly interpreted the law." *Baitis v. Department of Revenue of State*, 2004 MT 17, ¶ 24, 319 Mont. 292, ¶ 24, 83 P.3d 1278, ¶ 24. We must conclude that when the Legislature enacted the basin closure law, it was aware of and—declining to define municipal use—acquiesced in the agency's prior interpretations of the term.

¶29 We also presume the Legislature to know the contents of the code. *Baitis*, ¶ 24. As noted above, § 85-2-227(4), MCA, incorporates within the concept use by private entities that operate public water supply systems. Thus, the character of the *use* rather than the character of the *applicant* has been the defining factor in determining whether an application could be considered as one within the municipal use category; historically, therefore, private entities could qualify as municipal users as long as those entities were operating public water supplies.

¶30 Only after the DNRC adopted Admin. R. M. 36.12.101(39) (2005) was the interpretation of municipal use called into question. Eighteen months after its adoption, the regulation was repealed and the meaning of municipal use reverted to an agency interpretation, as applications were reviewed on a case-by-case basis. The regulation defining municipal use was not in effect for more than a year and a half. Eighteen months is not enough time for the agency to have instilled reliance in the public, whereas the time between the enactment of the basin closure law in 1993 and the promulgation of the new definition in 2005 is sufficient time to create reliance in the public and those

having an interest in the operation of public water supply systems. *Montana Trout Unlimited*, ¶ 37.

¶31 We agree with the DNRC that the Lohmeiers failed to demonstrate that their rights or privileges were impaired or threatened to be impaired by the repeal of the definition. The definition had not been in effect long enough for the Lohmeiers to rely on it or suffer from their reliance on it when it was repealed. Moreover, the Lohmeiers had implied notice of the historical interpretation of the term as the DNRC's public records show that private entities had previously been granted municipal use permits.

¶32 Finally, we also agree with the DNRC that the Lohmeiers failed to show that the agency's decision to repeal Admin. R. M. 36.12.101(39) (2005) was made with arbitrary and capricious disregard for the authorizing statute as evidenced by the legislative intent. It is an agency prerogative to enact rules to aid in the permitting process, and it is also an agency prerogative to repeal rules which are not of assistance, as long as in so doing, the agency does not violate § 2-4-506, MCA. We conclude the DNRC did not violate this statute when it repealed the subject administrative rule.

## CONCLUSION

¶33 For the aforementioned reasons, we conclude that the repeal of Admin. R. M. 36.12.101(39) (2005) was valid under § 2-4-506, MCA.

¶34 Reversed.

_____
Justice

16

We concur:

_____

_____

_____

_____
Justices

17